IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

KENNATH ARTEZ HENDERSON,     )
            )
    Petitioner,          )
            )    No. 2:06-cv-02050-STA-tmp
v.                 )
            )    CAPITAL CASE
KENNETH NELSEN, Warden,     )
            )
    Respondent.        )

_____

ORDER DENYING PETITIONER'S MOTION FOR RELIEF FROM JUDGMENT
AND CLOSING CASE

_____

Before the Court are the Petitioner's Motion for Relief From Judgment filed by counsel for

Petitioner Kennath Artez Henderson (ECF No. 151) pursuant to Federal Rule of Civil Procedure

Rule 60(b)(6), Respondent's Response in Opposition to the Motion for Relief From Judgment

(ECF No. 155) filed by Warden Kenneth Nelsen, and the Reply to Respondent's Response in

Opposition to Petitioner's Motion for Relief From Judgment (ECF No. 158).  Because Henderson

has not demonstrated a basis for extraordinary post-judgment relief, the motion (ECF No. 151) is

**DENIED**.

I.    **BACKGROUND**

On May 2, 1997, while on a trip to the dentist, Henderson, then an inmate at the Fayette

County Jail, killed Deputy Tommy Bishop, robbed the dentist, and took his truck.  *Henderson v.*

*State*, No. W2003-01545-CCA-R3-PD, 2005 WL 1541855, at \*1-2 (June 28, 2005), *perm. app.*

*denied* (Tenn. Dec. 5, 2005).  Henderson pleaded guilty to first-degree premeditated murder, two

counts of especially aggravated kidnapping, aggravated robbery, attempted especially aggravated

kidnapping, aggravated assault, and felonious escape and waived his right to jury sentencing.  *Id.*

After a capital sentencing hearing, the trial court imposed the death sentence for the murder and an effective sentence of twenty-three (23) years in prison for the noncapital offenses. *See id.* at *1, 4. The Tennessee Court of Criminal Appeals ("TCCA") and the Tennessee Supreme Court ("TSC") affirmed. *See State v. Henderson*, 24 S.W.3d 307, 319 (Tenn. 2000).

Henderson was denied post-conviction relief. *Henderson*, 2005 WL 1541855, at *1. The TCCA affirmed, and the TSC denied permission to appeal. *Id.* at *1, 47.

In 2006, Henderson, through counsel, filed an amended federal habeas petition pursuant to 28 U.S.C. § 2254. (ECF No. 16.) In Claim 20, he alleged for the first time that,

> In violation of the Sixth, Eighth, and Fourteenth Amendments, the grand jury was improperly constituted. Kennath Henderson was indicted by a grand jury, from which women and Blacks had been systematically excluded as grand jury forepersons, in violation of his right to due process, and equal protection, and to a grand jury selected from a fair-cross-section of the community, and to a grand jury free from discrimination or under representation against any cognizable group.

(*Id.* at PageID 131-32.)

In 2007, while the federal habeas proceedings were pending, Henderson filed a Motion to Reopen Petition for Post-Conviction Relief in the Circuit Court of Fayette County, Tennessee alleging, for the first time in state court, discrimination in the selection of the grand jury and the grand jury foreperson. (*See* ECF No. 151-1.) In August 2008, the post-conviction court denied relief saying "it appears pursuant to T.C.A. § 40-30-117 that Petitioner has not raised any new meritorious issues and is not entitled to post-conviction relief." (*See* ECF No. 151-2 at PageID 5379-80.)

On an application for permission to appeal, the TCCA addressed Henderson's argument that a motion to reopen is proper because: (1) "the relief requested would establish new rules in Tennessee although based upon old, federal constitutional law" predating Henderson's death sentence, and (2) the Tennessee courts had not yet applied the settled federal law governing his

2

claim.  (*See* ECF No. 151-4 at PageID 5627.)  In December 2008, the TCCA denied Henderson's

application for permission to appeal, stating:

> In the present case, Petitioner Henderson contends that he is entitled to relief because there was discrimination against women and African-Americans in the selection of the grand jury foreperson, in violation of the due process clause of the Fourteenth Amendment, the equal protection clause of the Fourteenth Amendment, the Fifth and Sixth Amendment rights to a grand jury selected from a fair-cross section of the community, the Eighth and Ninth Amendments, and Article I §§ 6, 8, 9, 14, & 16 of the Tennessee Constitution.  The Petitioner further argues that Rule 6(g)[1], Tennessee Rules of Criminal Procedure, was susceptible to abuse because it lacked any standards for choosing the foreperson.  The Petitioner concludes that "the evidence establishes a clear *prima facie* case that women and Black persons were the victims of illegal discrimination in the selection of the grand jury foreperson." (citations omitted).
>
> The Petitioner contends that Rule 6(g), Tennessee Rules of Criminal Procedure, gave unfettered discretion to the judge in the selection of the grand jury "foreman."  The Petitioner asserts that the United States Supreme Court recognized in *Rose v. Mitchell*, 443 U.S. 545, 548, 99 S. Ct. 2993 n. 2(1979), that, because the foreperson in Tennessee votes as a grand juror and also possesses additional, special powers, discrimination in the selection of the foreperson in Tennessee was unconstitutional in the present case given the undisputed proof about the exclusion of women and African-Americans as foreperson.  The Petitioner asserts that the Tennessee courts have yet to acknowledge the holdings of *Rose v. Mitchell* and other cases in the context of discrimination in the selection of the grand jury foreperson.  The Petitioner states that the Tennessee Supreme Court has rejected *Rose*, claiming that the foreperson has only ministerial duties.  *See State v. Bondurant*, 4 S.W.3d 662 (1999).  The Petitioner claims that the holding in *Bondurant* is directly contrary to Rule 6(g), Tennessee Rules of Criminal Procedure, and the precedent established by the United States Supreme Court in *Rose v. Mitchell* and *Hobby v. United States*, 468 U.S. 339, 104 S. Ct. 3093 (1984).
>
> The Petitioner asks this Court to grant relief by first acknowledging the existence of rights not previously recognized by Tennessee and not recognized at the time of his trial.  The Petitioner asserts that he has met the standard of section 40-30-117(a), Tennessee Code Annotated, because "the Tennessee courts have yet to recognize the fundamental federal rights at issue here."  The Petitioner maintains that, "[b]ecause the rights here would be newly recognized in Tennessee -though they are (and were at the time of indictment and trial) well-settled under federal due

---

[1] Tenn. R. Crim. P. 6(g)(1) states that the trial judge shall appoint the grand jury foreperson. Tenn. R. Crim. P 6(g)(4) states the duties of the foreperson including voting with the grand jury "which vote counts toward the twelve necessary for the return of an indictment."  *See* Tenn. R. Crim. P. 6(g)(4)(D).

process, equal protection, and fair-cross-section jurisprudence - this Court should grant the application for permission to appeal, grant the motion to reopen, and either grant relief on these claims ... or else remand for further proceedings ...."  The Petitioner states that "this Court is not at liberty to ignore the Supreme Court's holdings in *Rose* and *Hobby*, especially where Rule 6(g) on its face makes clear that the foreperson's duties are not ministerial."  (Emphasis in original).

Our supreme court, in *State v. Bondurant*, 4 S.W.3d at 675, explaining the holdings in *Rose v. Mitchell*, 443 U.S. at 545, 99 S. Ct. at 2993, and *Hobby v. United States*, 468 U.S. at 339, 104 S. Ct. at 3093, said that the method of selecting the grand jury foreperson is relevant only as to reviewing the composition of the grand jury as a whole, the "role of the grand jury foreperson in Tennessee [being] ministerial and administrative."  In Tennessee, the foreperson is the spokesperson and has the same voting power as any other grand jury member.  *See Bondurant*, 4 S.W.3d at 674 (citing *Bolen v. State*, 544 S.W.2d 918, 920 (Tenn. Crim. App. 1976)).  The Tennessee Supreme Court, in *Bondurant*, observed that, in *Hobby v. United States*, 468 U.S. at 339, 104 S. Ct. at 3093, the United States Supreme Court "greatly exaggerated" the powers of the Tennessee grand jury foreperson.  Moreover, the *Bondurant* Court noted that "nowhere in the majority opinion does the Court in *Rose* conclude that the Tennessee grand jury foreperson has virtual veto power over the indictment proceedings."  *Id*. at 675.

The Petitioner essentially asks this Court to disregard the holding of our supreme court in *State v. Bondurant*; we decline to do so.  As previously indicated, the grounds for reopening a post-conviction petition are very narrow: (1) a new constitutional right that is given retroactive application; (2) new scientific evidence of actual innocence; or (3) evidence of an improperly enhanced sentence.  *See* T.C.A. § 40-30-117(a)(1-3).  The Petitioner's claim of a new constitutional right fails to satisfy the requirements of section 40-30-117(a)(1).  Section 40-30-117(a)(1) provides that "the motion must be based upon a final ruling of an appellate court establishing a **constitutional right that was not recognized** as existing at the time of trial."  (Emphasis added).  To circumvent the plain language and intent of the statute, the Petitioner asks this Court to disregard our supreme court's ruling in *Bondurant*.  We decline to do so, noting that, even if this Court accepted the Petitioner's argument and rejected the holding in *Bondurant*, our ruling would not constitute a "final ruling."

The case law relied upon by the Petitioner was established in 1979 and 1984, respectively.  Our supreme court explained these holdings in *Bondurant* in 1999.  The Petitioner could have raised a challenge under *Rose* and *Hobby* during his trial and direct appeal.  The Petitioner could have also made a similar claim, including a challenge to the *Bondurant* holding, during his post-conviction petition.  The Petitioner failed to raise the issue at these times.  The claim regarding Rule 6(g), Tennessee Rules of Criminal Procedure, raised by the Petitioner is not "a final ruling of an appellate court establishing a constitutional right that was not recognized as existing at the time of trial...."  T.C.A. § 40-30-117(a)(1).  The

4

Petitioner's claim fails to present a claim under which a motion to reopen may be granted.

Although uniquely presented by the Petitioner, a petitioner may not thwart the plain language and intent of section 40-30-117, Tennessee Code Annotated, by requesting that the court rule differently than the Tennessee Supreme Court. A motion to reopen is not an avenue in which a petitioner may raise claims and/or challenges that should have and could have been made in previous proceedings. The opportunity to raise said claims was available to the Petitioner; he failed to present such challenges at the appropriate time. He is precluded from doing so now in a motion to reopen. While the Petitioner's argument to the contrary is novel, it is not persuasive.

For the reasons contained herein, we conclude that the Petitioner has failed to allege a ground under which a petition for post-conviction relief may be reopened.

(ECF No. 151-4 at PageID 5628-29.)

Henderson sought permission to appeal to the TSC (*see* ECF Nos. 151-5 through 151-7).

On April 27, 2009, the TSC denied permission to appeal. (ECF No. 151-8).

On March 30, 2011, in the federal habeas proceedings, this Court granted summary judgment stating that Claim 20 "was not exhausted in the state courts and is procedurally barred." (ECF No. 72 at PageID 4188.) The Court noted that Henderson attempted to reopen his state post-conviction proceedings to address the claim, but his motion to reopen had been denied. (*See id.*) On October 11, 2011, the Court resolved the remaining issues in the case and denied the amended § 2254 petition. (ECF No. 91.)[2]

---

[2] On November 7, 2011, Henderson filed a motion to alter or amend judgment based on *Cullen v. Pinholster*, 563 U.S. 170 (2011), asserting that the Court should have conducted a *de novo* review of the guilt phase ineffective assistance claims. (ECF No. 93.) On December 19, 2011, the Court denied relief. (ECF No. 95.) Henderson appealed, and the case was remanded for consideration of *Martinez v. Ryan*, 566 U.S. 1 (2012). (*See* ECF No. 97.) On May 8, 2014, the Court denied relief under *Martinez*, specifically rejecting Henderson's claim that the equitable principles of *Martinez* applied to Claim 20. (*See* ECF No. 34 at PageID 5021-23.)

Henderson appealed to the United States Court of Appeals for the Sixth Circuit. (ECF No. 138.) On May 10, 2023, the Sixth Circuit affirmed. (ECF No. 144.) *See Henderson v. Mays*, Nos. 12-5028/14-5911, 2023 WL 3347496 (6th Cir. May 10, 2023).[3]

In 2022, Henderson filed a petition for a writ of error coram nobis in the Fayette County Circuit Court challenging the death sentence. *See Henderson v. State*, No. W2023-00515-CCA-R3-ECN, 2024 WL 278542, at *1, 7 (Tenn. Crim. App. Jan. 25, 2024). He argued that he presented "newly discovered evidence in the form of brain scans that show he has brain damage and expert reports that show he has a severe mental illness, i.e., Bipolar Type 1, rapid-cycling bipolar disorder" and that he was not at fault for failing to present the evidence at sentencing and on post-conviction because his trial and post-conviction counsel were ineffective. *Id.* at *8. The coram nobis court summarily denied Henderson's petition. *Id.* at *7. The TCCA affirmed the judgment of the coram nobis court. *Id.* at *1, 11. Henderson did not raise his grand jury foreperson claim in the coram nobis proceedings.

In a petition for writ of certiorari to the United States Supreme Court, Henderson argued, based on *Rose v. Mitchell*, 443 U.S. 545 (1979), that the State of Tennessee has refused to implement the Supreme Court's mandate prohibiting racial discrimination in the selection of a foreperson for a Tennessee grand jury. *See Henderson v. Pounds*, No. 23-6160, (U.S. Nov. 30, 2023), Petition for A Writ of Certiorari to the Sixth Circuit Court of Appeals, p. i (last accessed Mar. 12, 2026). Henderson alleged that the Tennessee court "found that, because the state does not recognize *Rose* and its progeny," Henderson did not raise a previously unavailable

---

[3] On appeal, Henderson filed a motion to expand the certificate of appealability in which he asked for consideration of Claim 20. *See Henderson v. Carpenter*, No. 12-5028, Doc. 82 at p.2 (6th Cir. Dec. 25, 2014). However, the Sixth Circuit only certified ineffective assistance of trial counsel claims for appellate review. (*See* ECF No. 144 at PageID 5106.)

constitutional right and "also asserted – without invoking, let alone relying on any state procedural rule – that he should have raised his claim earlier." *Id.* Henderson argued that "the state court vitiated the independence of any putative state procedural bar by addressing the federal merits of the claim and holding that this Court's precedent has no merit." *Id.* Henderson asserted that, in the federal habeas proceedings, the district court refused "to review the merits of the claim pursuant to the procedural default doctrine, a decision that Mr. Henderson was not permitted to seek appellate review." *Id.* The petition for writ of certiorari was denied. *See Henderson v. Pounds*, 144 S. Ct. 1068 (2024).

Henderson filed a petition for rehearing addressing ineffective assistance of counsel which was also denied. *See Henderson v. Pounds*, 144 S. Ct. 1068 (2024). He did not argue the grand jury discrimination claim. *See Henderson v. Pounds*, No. 23-6160, (U.S. May 13, 2024), <u>Petition for Rehearing</u> (last accessed Mar. 12, 2026).

## II.    LEGAL STANDARDS

Henderson seeks equitable relief under Fed. R. Civ. P. 60(b)(6) on the grand jury discrimination claim (Claim 20) which was denied by this Court as procedurally defaulted. (ECF No. 151 at PageID 5153, 5171-73.) He argues that *Glossip v. Oklahoma*, 604 U.S. 226 (2025), "clarifies" the independent and adequate state ground ("IASG") doctrine as it relates to procedural default. (*Id.* at PageID 5154, 5158-62.)[4] Henderson contends that the state court relied on an antecedent question of federal law – whether Henderson had a right to non-discrimination in the

---

[4] The IASG doctrine does not come into play unless there is a state court decision on the claim. *See Wainwright v. Sykes*, 433 U.S. 72, 87-88 (1977). Initially, in Henderson's case, there was no state court decision procedurally barring federal habeas review of Claim 20 because the claim had not been presented.

7

selection of a grand jury foreperson – and, therefore, the claim should be reviewed on the merits. (*See id.* at PageID 5162-74.)

Henderson's Rule 60 motion raises issues about the post-judgment procedural posture of the case, procedural default, the Tennessee law concerning post-conviction relief, and the potential impact of the *Glossip* case.

### A. <u>Rule 60(b)(6)</u>

Rule 60(b)(6) allows for post-judgment relief for "any other reason that justifies relief" than those reasons enumerated in Rule 60(b)(1-5).[5] *See* Fed. R. Civ. P. 60(b)(6). Rule 60(b)(6) relief is granted only in "exceptional or extraordinary circumstances" and is "'circumscribed by public policy favoring finality of judgments and termination of litigation." *See King v. United States*, 143 F.4th 705, 710–11 (6th Cir. 2025) (quoting *Ford Motor Co. v. Mustangs Unlimited, Inc.*, 487 F.3d 465, 468 (6th Cir. 2007)). "[A] change in decisional law is usually not, by itself, an 'extraordinary circumstance' meriting Rule 60(b)(6) relief." *Id.* (citing *Blue Diamond Coal Co. v. Trustees of the UMWA Combined Ben. Fund*, 249 F.3d 519, 524 (6th Cir. 2001)). Extraordinary circumstances, for purposes of Rule 60(b)(6), "rarely occur in the habeas context." *In re West*, 103 F.4th 417, 419–20 (6th Cir. 2024) (citing *Buck v. Davis*, 580 U.S. 100, 112-13 (2017)). To determine whether extraordinary circumstances exist, courts may balance several factors, including "the risk of injustice to the parties," "the risk of undermining the public's confidence in

---

[5] The enumerated reasons in Rule 60(b)(1-5) which allow for relief from a final judgment, order or proceeding are: "(1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party; (4) the judgment is void; [and] (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable." Fed. R. Civ. P. 60(b)(1-5).

the judicial process," and the "competing policies of the finality of judgments and the incessant command of the court's conscience that justice be done in light of all the facts." *Id*. at 419-20. Courts evaluate Rule 60(b)(6) motions on a "case-by-case" basis. *Id.* at 420.

### B.  Exhaustion & Procedural Default

A federal court may not grant a writ of habeas corpus on behalf of a state prisoner unless, with certain exceptions, the prisoner has exhausted available state remedies by presenting the same claim sought to be redressed in a federal habeas court to the state courts.  28 U.S.C. § 2254(b) & (c); *see Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).  The exhaustion requirement is satisfied if a prisoner invokes one complete round of the state's established appellate review process. *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).  Thus, "we ask not only whether [petitioner] has exhausted his state remedies, but also whether he has properly exhausted those remedies, i.e., whether he has fairly presented his claims to the state courts." *Id*. at 8498.  "[W]here the claim has been presented for the first and only time in a procedural context in which its merits will not be considered unless 'there are special and important reasons,'" the requirement of "fair presentation" is not met.  *Castille v. Peoples*, 489 U.S. 346, 351 (1989); *see Fischer v. Nagy*, No. 24-1196, 2025 WL 2336591, at *3 (6th Cir. Aug. 13, 2025) (the "fair presentation requirement is not satisfied when a claim is presented in state court in a procedurally inappropriate manner that renders consideration of the merits unlikely").  The petitioner must avail himself of the "established appellate review process," and not rely solely on "extraordinary" procedures that require "special and important reasons" before the state court will reach the merits of the claims. *See O'Sullivan*, 526 U.S. at 844.  The petitioner must "fairly present" each claim to all levels of state court review, up to and including the state's highest court on discretionary review, *Baldwin v. Reese*, 541 U.S. 27, 29 (2004), except when the state has explicitly disavowed state supreme

court review as an available state remedy, *O'Sullivan*, 526 U.S. at 847-48.[6]

The procedural default doctrine is ancillary to the exhaustion requirement. *See Edwards v. Carpenter*, 529 U.S. 446, 452-53 (2000) (noting the interplay between the exhaustion rule and the procedural default doctrine). A federal habeas claim may be procedurally defaulted in two distinct ways: (1) by failing to comply with state procedural rules, and (2) by failing to raise the claim in state court and not pursuing it through the state's ordinary review process. *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006) (citing *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986) and *O'Sullivan*, 526 U.S. at 848).

With the first type of default, if a state court decides a claim on an independent and adequate state ground ("IASG"), such as a procedural rule prohibiting the state court from reaching the merits of the constitutional claim, a petitioner ordinarily is barred from seeking federal habeas review. *Wainwright*, 433 U.S. at 87-88; *see Walker v. Martin*, 562 U.S. 307, 315 (2011) ("A federal habeas court will not review a claim rejected by a state court if the decision of the state court rests on a state law ground that is independent of the federal question and adequate to support the judgment") (internal quotation marks and citation omitted); *see Coleman v. Thompson*, 501 U.S. 722, 729-30 (1991).

With the second type of default, if a claim has never been presented to the state courts or was not presented in the ordinary review process *and* a state court remedy is no longer available (e.g., when an applicable statute of limitations bars a claim), the claim is technically exhausted,

---

[6] Tennessee Supreme Court Rule 39 eliminated the need to seek review in the Tennessee Supreme Court to "be deemed to have exhausted all available state remedies." *Adams v. Holland*, 330 F.3d 398, 402 (6th Cir. 2003); *see Smith v. Morgan*, 371 F. App'x 575, 579 (6th Cir. 2010). To avoid procedural default, federal law requires a federal habeas petitioner in Tennessee to present his federal claims to the Tennessee Court of Criminal Appeals. *Covington v. Mills*, 110 F. App'x 663, 665 (6th Cir. 2004).

but procedurally barred.  *Coleman*, 501 U.S. at 731-32; *see Robertson v. Fender*, No. 20-4215, 2021 WL 1978359, at *2 (6th Cir. Apr. 28, 2021).  The failure to properly exhaust "legitimate chances" to present the claim in state court results in procedural default on federal habeas review. *See Gaither v. Lane*, No. 24-5942, 2026 WL 698161, at *3, 7 (6th Cir. Mar. 12, 2026) ("if Gaither missed his once-open window to make his claims, the claims are defaulted").

Regardless of the type of default, a petitioner may overcome procedural default by showing cause for the default and actual prejudice stemming from the constitutional violation or, alternatively, that a failure to review the claim will result in a fundamental miscarriage of justice or actual innocence of the crime.  *Schlup v. Delo*, 513 U.S. 298, 320-21 (1995); *Coleman*, 501 U.S. at 750; *see House v. Bell*, 547 U.S. 518, 536-39 (2006).

## C.  Tennessee Post-Conviction Proceedings

Tenn. Code Ann. § 40-30-102(c) contemplates the filing of "only one" petition for post-conviction relief.  A petitioner *may* bring new post-conviction claims, under limited circumstances, through a motion to reopen post-conviction proceedings.  *See* Tenn. Code Ann. § 40–30–102(c), et seq.  However, the remedy is only available on "very narrow grounds" if: (1) the claim is based upon a new, retroactively applicable rule of constitutional law and is filed within one year of the court's decision establishing that right;[7] (2) the claim is based upon new scientific evidence of the petitioner's actual innocence; or (3) the claim challenges a sentence that was enhanced by a prior conviction that has since been overturned.  *See* Tenn. Code Ann. § 40–30–117(a)(1)–(3); *see Wren v. State*, No. W2017-00500-CCA-R3-PC, 2017 WL 4331054, at *2 (Tenn. Crim. App. Sept. 28,

---

[7] Specifically, Tenn Code Ann. § 40-30-117(a)(1) is for a claim that is "based upon a final ruling of an appellate court establishing a constitutional right that was not recognized as existing at the time of trial, if retrospective application of that right is required.  The motion must be filed within one (1) year of the highest state appellate court or the United States Supreme court establishing a constitutional right that was not recognized as existing at the time of trial."

2017).  The grant of a motion to reopen "does not fully place a petitioner back into the procedural posture of his original post-conviction proceedings."  *Anderson v. State*, 692 S.W.3d 94, 103 (Tenn. Crim. App. 2023).  The TSC has held that claims raised in a motion to reopen and subsequent amendments may be barred by the statute of limitations, previous determination, or waiver.  *Id.* (citing *Coleman v. State*, 341 S.W.3d 221, 255 (Tenn. 2011)).

"The reopening mechanism is not intended as a second appeal but as a limited safety valve for extraordinary circumstances."  *Suttles v. State*, No. E2025-00086-CCA-R28-PD, 2025 WL 3002925, at *3 (Tenn. Crim. App. Oct. 27, 2025).[8]  The limitations on this remedy reflect "a balance between the need for finality and the imperative to correct truly fundamental constitutional errors that could not have been raised earlier."  *Id.*

### D.  The *Glossip* Case

The *Glossip* case involves later-discovered claims under *Brady v. Maryland*, 373 U.S. 83 (1963), and *Napue v. Illinois*, 360 U.S. 264 (1959), which were procedurally barred when presented in an unopposed successive state petition for post-conviction relief.  *See Glossip*, 604 U.S. at 241-42.

Glossip, an Oklahoma hotel manager, was convicted and sentenced to death for paying Justin Sneed to murder hotel owner Barry Van Treese.  *See Glossip*, 604 U.S. at 231-234.  Sneed admitted that he had beaten the victim to death.  *Id.*  Glossip confessed to helping Sneed conceal the crime, but Glossip maintained his innocence.  *Id.* at 231-34, 237.

---

[8] *See Kutcherman v. Rouse*, No. CIV.A. CCB-07-666, 2009 WL 430647, at *2 (D. Md. Feb. 18, 2009) ("a motion to reopen proceedings is a mechanism created to provide a remedy in the rare case where the one-petition limit has already been exhausted and the interests of justice require reopening the proceedings . . .  [and] is therefore not a general procedural entitlement").

The conviction was reversed on direct appeal because the evidence connecting Glossip to the murder was "extremely weak." *Id.* at 234. Glossip rejected a plea offer and was again convicted and sentenced to death. *Id.* at 234-36. A "closely divided" Oklahoma Court of Criminal Appeals ("OCCA") affirmed, finding that the circumstantial evidence corroborated Sneed's testimony. *Id.* at 236.

Nearly two decades later, the State disclosed eight boxes of previously withheld documents. *Id.* at 231, 238-29. The documents showed that Sneed suffered from bipolar disorder which, with his drug use, could lead to impulsive violent outbursts. *Id.* at 231, 239. The jail psychiatrist prescribed lithium for Sneed. *Id.* At trial, the prosecution allowed Sneed to testify falsely that he had never seen a psychiatrist. *Id.* at 231.

The attorney general confessed error. *Id.* Before the OCCA in response to the successive post-conviction petition, the State conceded error that the prosecution's failure to correct Sneed's testimony violated *Napue*. *Id.* The attorney general asked the OCCA to grant Glossip a new trial, and the OCCA refused because the State's concession was not "based in law or fact." *Id.* at 231, 241. Then, applying Oklahoma's Post-Conviction Procedures Act ("OPCPA"), the OCCA "concluded separately that the evidence presented by the parties did not 'create a *Napue* error.'" *Id.* at 241.

The Supreme Court granted certiorari on the *Brady* and *Napue* claims and the effect of the attorney general's confession of error and requested argument on the question of "whether the OCCA's holding that the [OPCPA] precluded post-conviction relief is an adequate and independent state-law ground for the judgment." *Glossip*, 604 U.S. at 242.

The Supreme Court first addressed jurisdiction stating "[t]his Court will not take up a question of federal law . . . 'if the decision of [the state] court rests on a state law ground that is

13

*independent* of the federal question and *adequate* to support the judgment.'" *Id*. (citing *Cruz v. Arizona*, 598 U.S. 17, 25 (2023), and quoting *Coleman*, 501 U.S. at 729 ("the independent and adequate state ground doctrine is jurisdictional")). Citing *Foster v. Chatman*, 578 U.S. 488, 498 (2016), the Court said that "a state ground of decision is independent only when it does not depend on a federal holding." *Glossip*, 604 U.S. at 242. Citing and quoting *Michigan v. Long*, 463 U.S. 1032, 1040-41 (1983), the Supreme Court noted that the state ground of decision cannot be "intertwined with questions of federal law" and that "[w]hen the adequacy and independence of any possible state law ground is not clear from the face of the opinion, we will accept as the most reasonable explanation that the state court decided the case the way it did because it believed that the federal law required it to do so." *Glossip*, 604 U.S. at 242-43.

The Supreme Court found that it had jurisdiction because the OCCA "first rejected the attorney general's confession of *Napue* error, deeming it meritless and therefore incapable of 'overcoming' application of the [OPCPA]" and only then applied the OPCPA. *Glossip*, 604 U.S. at 243-44. The Supreme Court noted that the OCCA normally rejects a confession of error "only after finding that it lacks a basis in the law and in the record." *Id.* at 244. If the OCCA finds that the confession of error is supported by law and the record, it will reverse the conviction and remand for new trial. *Id.* The Supreme Court held that, in finding that there was no basis "in law or fact" and then applying the OPCPA, the OCCA "made application of the procedural bar depend on an antecedent ruling on federal law, that is, on the determination of whether federal constitutional error ha[d] been committed." *Id.* (quoting *Ake v. Oklahoma*, 470 U.S. 68, 75 (1985)).

## III. <u>ANALYSIS</u>

Henderson argues that his case is similar to *Glossip* because both Henderson and Glossip presented their unexhausted claims in procedurally similar circumstances with Glossip raising his

14

unexhausted claims in a successive petition for post-conviction relief and Henderson raising his unexhausted claim in a motion to reopen post-conviction proceedings. (ECF No. 151 at PageID 5162.) Henderson contends that, in both cases, the respondents asserted that merits consideration of their claims was barred on state procedural law grounds, with Glossip being barred under the OPCPA and with Henderson being barred by Tenn. Code Ann. § 40-30-117(a). (*Id.* at PageID 5162-63.) Henderson argues that the OCCA in *Glossip* considered the antecedent federal question of whether there was a meritorious *Napue* clam and that the TCCA considered the antecedent federal question of whether Henderson had a meritorious grand jury foreperson discrimination claim. (*Id.* at PageID 5163.) Henderson contends that this Court's procedural default ruling on Claim 20 was based on a "mistake of law" because the Court was not prohibited from a merits review of the claim where the TCCA's opinion was a determination of an antecedent federal question and was not based on an independent and adequate state procedural ground.[9] (*See* ECF No. 151 at PageID 5154, 5163.)

Henderson argues that the plain text of § 40-30-117 links the reopening of state post-conviction proceedings to consideration of federal questions by requiring the state court to consider the constitutional right that was purportedly violated. (*Id.* at PageID 5163-64.) Henderson asserts that, under the statute, proceedings may only be reopened if a new constitutional right exists and retroactive application is required, so he argues that any decision that a federal constitutional claim is not cognizable under § 40-30-117(a)(1) is "necessarily 'interwoven with federal law' and subject to review in federal court." (*Id.* at PageID 5164.) Henderson contends that the TCCA clearly

---

[9] Although Henderson asserts that the Court's decision was a mistake, he fails to present this claim under Fed. R. Civ. P. 60(b)(1).

considered whether he had a constitutional right to non-discrimination in the selection of the grand jury and used a large portion of the opinion determining that he did not. (*Id.*)

### A. *Glossip* Did Not Clarify the IASG Doctrine

Henderson focuses on the TCCA's order denying the application for permission to appeal the denial of his motion to reopen to invoke the IASG doctrine and *Glossip*. (*See* ECF No. 151 at PageID 5158-59, 5162-65.) Henderson moves for extraordinary relief on Claim 20 because he contends that *Glossip* "clarified that where the application of state procedural bar depends on antecedent federal question . . . then a federal court is not barred by the adequate and independent state ground doctrine from considering a petitioner's claim on the merits. " (*See id*. at PageID 5161-62.)

However, the Warden argues that Henderson's motion "establishes nothing extraordinary" to warrant Rule 60(b) relief. (ECF No. 155 at PageID 5881-82.) The Warden contends that a change in decisional law is not an extraordinary circumstance and that *Glossip* does not clarify the IASG doctrine, but merely recites well-established precedent. (*See id.* at PageID 5877-78, 5882-83.) The Warden points out that the majority in *Glossip* cites *Foster*, 578 U.S. at 489, *Michigan*, 463 U.S. at 1040-41, and *Ake*, 470 U.S. at 75, to support its holding. *See Glossip*, at 242-44.

Because the Supreme Court relied on prior precedent without modification, the decision in *Glossip* did not clarify the IASG doctrine. To the extent Henderson argues that *Glossip* clarified or changed the law, he has not established extraordinary circumstances for Rule 60(b)(6) relief.

### B. *Glossip* Does Not Apply

The Warden argues that *Glossip* is irrelevant to Henderson's procedural default because "the Court found procedural default based on Henderson's failure to properly litigate the claim at the appropriate time in state court, not through the adequate-independent doctrine" and that the

16

attempt to reopen the post-conviction proceeding was not a means to exhaust the claim.  (ECF No. 155 at PageID 5884.)  The Court dismissed Claim 20 as procedurally defaulted because Henderson failed to exhaust the claim in the state courts.  (*See* ECF No. 72 at PageID 4188.)  The Court acknowledged Henderson's argument that he "continues to attempt to exhaust" and that his motion to reopen had been denied.  (*Id.*)  The Court held that the claim "was not exhausted in the state court and is procedurally barred."  (*Id.*)  The Court ruled based on the second form of default where there are no available state remedies in the ordinary review process.  *See Hodges v. Colson*, 727 F.3d 517, 530 (6th Cir. 2013) (noting Tennessee's one petition rule for post-conviction relief and the limits on reopening post-conviction proceedings); *see Maraschiello v. Mays*, No. 3:21-CV-00302, 2023 WL 6979347, at *14 (M.D. Tenn. Oct. 23, 2023) (same); *see Moore v. Mitchell*, 708 F.3d 760, 776 (6th Cir. 2013) (defaulted where Moore did not raise claim on direct appeal or post-conviction petition and could not meet the limited circumstances for a successive petition); *see Zagorski v. Bell*, No. 3:99-1193, 2006 WL 8455679, at *71 (M.D. Tenn. Mar. 31, 2006), *aff'd,* 326 F. App'x 336 (6th Cir. 2009) (claim could not be exhausted because Zagorski failed to reopen the post-conviction proceedings).

The Court mentioned nothing about the substance of the TCCA's decision.  The Court did not reference a state procedural ground as the basis for default in the state court.  Because the IASG doctrine was not at issue, *Glossip* is inapplicable to the Court's procedural default ruling. Henderson simply failed to litigate the claim when it was available to him in the ordinary review process, and he could not use this statutory avenue to exhaust the previously available claim.

### C. *Buck* and Impermissible Racial Discrimination

Henderson relies on *Buck*, 580 U.S. at 123-24, to argue that the risk of undermining the public's confidence in the judicial process and impermissible racial discrimination are the type of

extraordinary circumstances that warrant review under Fed. R. Civ. P. 60(b)(6).  (ECF No. 151 at PageID 5171-73; *see* ECF No. 158 at PageID 5917-18.)  Henderson argues that Tennessee courts have refused to follow the United States Supreme Court's well-established case law perpetuating "a more-than-century-old practice of racial discrimination in the Tennessee grand jury system." (ECF No. 151 at PageID 5173.)  Henderson contends that any state interest in finality deserves little weight.  (*Id.*)

Buck's counsel presented the testimony of a psychologist in Buck's capital murder case to testify about Buck's likelihood of violence in the future, and the psychologist concluded that, because Buck was black, he was statistically likely to be violent in the future.  *Buck*, 580 U.S. at 100.  The district court denied Rule 60(b)(6) relief because: (1) Buck failed to demonstrate extraordinary circumstances; and (2) even if the circumstances were extraordinary, the claim would fail, in part, because the court had concluded that "the introduction of any mention of race was . . . *de minimis.*"  *Id.* at 113-114.  The Fifth Circuit denied a certificate of appealability because the case was "not extraordinary at all in the habeas context."  *Id.* at 114-15.

The Supreme Court did not accept the district court's conclusion that the mention of race was *de minimis*.  *Id*. at 121.  The court opined that "when a jury hears expert testimony that expressly makes a defendant's race directly pertinent on the question of life or death, the impact of that evidence cannot be measured simply by how much air time it received at trial or how many pages it occupies in the record.  Some toxins can be deadly in small doses."  *See id.* at 121–22. Further, the Court noted that the ineffective assistance of counsel was not run-of-the-mill as "Buck may have been sentenced to death in part because of his race."  *Id.* at 123.  The Supreme Court in *Buck* notes that the state's "remarkable steps" in confessing error and consenting to resentencing are evidence of how extraordinary the circumstances were.  *Id*. at 124-25.  *Buck* presented an

extraordinary circumstance in which the State confessed error, and there was testimony at trial offered by defense counsel on the issue of race that factored into the death sentence.

In the instant case, there is no confession of error like in *Glossip* and *Buck*. Further, no racially discriminatory evidence was presented to the judge that would have affected his determination that Henderson should be sentenced to death. Henderson has not demonstrated extraordinary circumstances or that the interests of justice require Rule 60(b)(6) relief.

## IV.   CONCLUSION

For the above reasons, Petitioner's Motion for Relief From Judgment filed by counsel for Petitioner Kennath Artez Henderson (ECF No. 151) is **DENIED**. The Clerk is **DIRECTED** to close the case without entry of judgment.

## V.   APPELLATE ISSUES

No § 2254 petitioner may appeal without a certificate of appealability ("COA"). 28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22(b)(1). To obtain a COA, a petitioner must make "a substantial showing of the denial of a constitutional right." *See* 28 U.S.C. § 2253(c)(2); *see Dennis v. Burgess*, 131 F.4th 537, 539 (6th Cir. 2025). A petitioner must demonstrate "that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). If the district court denies relief on a procedural ground without reaching the underlying constitutional claim, a COA should issue when the petitioner demonstrates "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

19

Because jurists of reason would not debate the district court's resolution of Petitioner's claims, the Court **DENIES** a COA.

A party seeking pauper status on appeal must first file a motion in the district court, along with a supporting affidavit. Fed. R. App. P. 24(a)(1). If the district court certifies that an appeal would not be taken in good faith or otherwise denies leave to appeal *in forma pauperis*, the prisoner must file his motion to proceed *in forma pauperis* in the appellate court. *See* Fed. R. App. P. 24(a)(4)-(5). For the same reasons the Court denies a COA, the Court **CERTIFIES** that any appeal would not be taken in good faith. Leave to appeal *in forma pauperis* is **DENIED**.[10]

**IT IS SO ORDERED.**

**s/ S. Thomas Anderson**
S. Thomas Anderson
United States District Judge

Date: April 7, 2026.

---

[10] If Petitioner files a notice of appeal, he must pay the full $605 appellate filing fee or file a motion to proceed *in forma pauperis* and supporting affidavit in the Sixth Circuit Court of Appeals within 30 days of the date of entry of this order. *See* Fed. R. App. P. 24(a)(5).

20